366 S.E.2d 650

### The MARION COUNTY BOARD OF EDUCATION

v.

### Leonard BONFANTINO.

### No. 17565.

Supreme Court of Appeals of West Virginia.

Feb. 24, 1988.

---

Kathleen Abate, Cohen, Abate & Cohen, Fairmont, William B. McGinley, Charleston, for Leonard Bonfantino.

J. Montgomery Brown, P.A., John Higginbotham, Fairmont, for Marion Co. Bd. of Educ.

MILLER, Justice:

We accepted this case to resolve what appear to be varying interpretations of W.Va.Code, 18A–4–8b(a), by local school boards. The question presented is whether a public school principal may reassign a teacher to an unposted vacancy within the school. The Circuit Court of Marion County, in reliance upon a memorandum by the state superintendent of schools, determined that a vacancy need not be posted where it is filled by intraschool appointment. We conclude that the posting requirements of W.Va.Code, 18A–4–8b(a), are mandatory for all teacher vacancies, and reverse the judgment of the circuit court.

The basic facts are not in dispute. Leonard Bonfantino is a tenured teacher employed by the Marion County Board of Education and is presently assigned to East Fairmont High School as a social studies and American history teacher. He is also certified in the area of guidance counseling.

During the 1985–86 school year, the guidance counselor at North Marion High School was promoted to an unspecified position at the Board's central office. The principal then assigned Judith Miller, a Spanish teacher at the school, to the vacant position. Notice of the vacancy was not posted by the Board for a period of five working days as required by W.Va.Code, 18A–4–8b(a). After the guidance counselor position was filled, the Spanish teacher vacancy was posted.

Mr. Bonfantino expressed an interest in the vacant guidance counselor position, but was not advised of the vacancy until after Ms. Miller had been assigned. The matter was submitted to grievance pursuant to W.Va.Code, 18–29–1, et seq.[1] A hearing examiner issued a decision on August 8, 1986, which upheld the grievance and ordered the Board to post the vacancy.

The Circuit Court of Marion County, in a memorandum opinion dated October 27, 1986, reversed the decision of the hearing examiner. The circuit judge was apparently persuaded by a prior interpretation by the state superintendent of schools which permitted principals to fill teacher vacancies without the necessity of posting. The

---

**1.** W.Va.Code, 18–29–1, et seq., provides a multi-level grievance procedure for public school teachers. A limited right of judicial review is available to either party under W.Va.Code, 18–29–7.

court's opinion balanced the "rights of individual teachers" against the "smooth functioning of a state-wide educational system," and concluded that the superintendent's interpretation of the posting requirement was not "unlawful." An order of reversal was entered on December 15, 1986, and Mr. Bonfantino appealed.

Most of the arguments advanced by the parties relate to policy reasons which are said to favor their respective positions. The Board argues that permitting the principal to reassign within the school gives him a measure of flexibility which is needed for the harmonious operation of the school. Mr. Bonfantino, in turn, contends the statutory language is sufficiently clear and mandatory that it should be applied rather than construed.[2]

There can be little doubt that the Legislature in 1983 made two significant changes to W.Va.Code, 18A-4-8b(a), which have a direct bearing on the resolution of this case.[3] First, it added a new paragraph which established a general formula to guide county boards of education in "mak[ing] decisions affecting promotion and filling of any classroom teacher's position."[4] We spoke to the effect of this new paragraph in *Dillon v. Board of Educ.*, 177 W.Va. 145, 148, 351 S.E.2d 58, 61 (1986):

"Prior to 1983, W.Va.Code, 18A-4-8b, entitled 'Seniority rights for professional and school service personnel,' granted professional personnel seniority rights only with regard to lay-offs and preferential recalls. By the addition of the language in question regarding teacher promotions and vacancies, the legislature must have intended seniority to play some role in the selection process." (Footnote omitted).[5]

The second significant change made in the 1983 amendments to W.Va.Code, 18A-4-8b(a), was the insertion of a requirement that notices be posted for "all openings in established, existing or newly created [teacher] positions":

"[County] [b]oards [of education] shall be required to post and date notices of all openings in established, existing or newly created positions in conspicuous working places for all professional personnel to observe for at least five working days. The notice of such position openings shall include the job description. No vacancy shall be filled until after the five-day minimum posting period."

It is noteworthy that the posting requirement is directed at county boards of education, and is made mandatory by the use of the phrase "shall be required."[6] Posting is not limited to the school where the opening occurs since the notice must be placed "in conspicuous working places for all professional personnel to observe for at least five working days." This cannot be narrowed to read "all personnel in the

---

2. This is a customary rule of statutory construction, as evidenced by Syllabus Point 3 of *Pullano v. City of Bluefield*, 176 W.Va. 198, 342 S.E.2d 164 (1986): " '"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).' Syllabus Point 2, *State ex rel. Underwood v. Silverstein*, [167] W.Va. [121], 278 S.E.2d 886 (1981)."

3. 1983 W.Va.Acts ch. 78.

4. The complete paragraph from W.Va.Code, 18A-4-8b(a), is:

"A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications. If the applicant with the most seniority is not selected for the position a written statement of reasons shall be given to the applicant with the most seniority with suggestions for improving the applicant's qualifications."

5. We came to this conclusion in Syllabus Point 1 of *Dillon*:

"Under W.Va.Code, 18A-4-8b(a) (1983), decisions of a county board of education affecting teacher promotions and the filling of vacant teaching positions must be based primarily upon the applicants' qualifications for the job, with seniority having a bearing on the selection process when the applicants have otherwise equivalent qualifications or where the differences in qualification criteria are insufficient to form the basis for an informed and rational decision."

6. Under our usual rules of statutory construction, the word "shall" is deemed to be mandatory and not directory. *E.g., Rogers v. Hechler*, 176 W.Va. 713, 348 S.E.2d 299 (1986); *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625 (1983).

school where the vacancy occurs," much less to the degree the Board would have us to read: "No posting is required at all if the vacancy is filled within the school."

It is apparent that the posting requirement was designed to provide the procedural vehicle to effectuate the other significant 1983 amendment, i.e., the filling of classroom teacher's positions based on qualifications and seniority. The most reasonable way to insure that the most qualified person is found to fill a position is to post a notice of its availability so that all interested and qualified persons may be apprised of it.

To adopt the position urged by the Board would only narrow the pool of available candidates.[7] This is contrary to the legislative intent as found in *Dillon,* 177 W.Va. at 148, 351 S.E.2d at 61, which was to further the "strong public policy favoring the hiring and advancement of teachers based on their abilities."

While the Board attempts to distinguish between the terms "openings" and "vacancies," relying upon provisions in W.Va. Code, 18A-4-8b(b), which govern posting for school service personnel,[8] a fair reading of this entire section leads to the conclusion that the terms are used interchangeably.

We also cannot accept the Board's argument that the principal's need for flexibility requires these in-house appointments to be made by him. The statute, W.Va.Code, 18A-4-8b(a), places the responsibility to make "decisions affecting promotion and filling of any classroom teacher's position" and to post notices of vacancies upon the local school board. Under W.Va.Code, 18A-2-7, it is the "superintendent, subject only to approval of the board, [who] shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter."[9] A principal's statutory role is limited to "submit[ting] recommendations to the superintendent" regarding such personnel decisions. W.Va.Code, 18A-2-9.[10]

Finally, the broad general language of both of the 1983 amendments militates against any attempt to confine the pool of applicants to the school where the opening or vacancy occurs. The language is too plain and unambiguous to admit of such interpretative attempts. For this reason, we decline to accept the Board's argument that the state superintendent of schools had in the past indicated that posting was not required for an intraschool transfer. In *City of Fairmont v. Hawkins,* 172 W.Va. 240, 304 S.E.2d 824 (1983), we spoke to the effect of contrary interpretations of an unambiguous statute by a public official, and stated in Syllabus Point 4:

"Where a specific statute or ordinance exists prescribing how official acts should be done, the statutory mandate may not be circumvented by permitting the public official to show that in the

---

7. The pool would not only be narrowed for the first vacancy. Where, as here, the vacancy is filled by someone in the school, a second vacancy is created. If this vacancy is also filled from within the school, the pool of available applicants would be reduced still further.

8. The relevant paragraph of W.Va.Code, 18A-4-8b(b), is:

"Boards shall be required to post and date notices of all job vacancies of established existing or newly created positions in conspicuous working places for all school service employees to observe for at least five working days. The notice of such job vacancies shall include the job description, the period of employment, the amount of pay and any benefits and other information that is helpful to the employees to understand the particulars of the job. After the five day minimum posting

period all vacancies shall be filled within twenty working days from the posting date notice of any job vacancies of established existing or newly created positions."

9. Obviously, utilization of substitute teachers under W.Va.Code, 18A-2-3, for teachers who are on temporary leave is not affected by W.Va. Code, 18A-4-8b(a).

10. The relevant language of W.Va.Code, 18A-2-9, is:

"The principal may submit recommendations to the superintendent regarding the appointment, assignment, promotion, transfer and dismissal of all personnel assigned to the school or schools under said principal's control. Such recommendation shall be submitted in writing as prescribed by the superintendent."

past the required statutory procedure has been ignored."[11]

We, therefore, conclude that where a vacancy occurs in a teaching position at a public school, the county board of education must post a notice of such vacancy pursuant to W.Va.Code, 18A–4–8b(a), and *the principal of the school in which the vacancy occurs is without authority to assign another teacher to the vacancy.* The judgment of the Circuit Court of Marion County is reversed and the case is remanded with directions to reinstate the decision of the hearing examiner.

Reversed and Remanded With Directions.

---

**11.** *Hawkins* relied on our earlier case of *State v. Chilton,* 49 W.Va. 453, 39 S.E. 612 (1901), and indicated in note 6, 172 W.Va. at 245, 304 S.E.2d at 829, that if a statute was susceptible of two reasonable interpretations, then a longstanding construction by an official charged with its administration was entitled to considerable weight.